UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 21-122 |
| BENJAMIN TEKIPPE | SECTION M |

**ORDER & REASONS**

Before the Court is defendant Benjamin Tekippe's motion for judgment of acquittal or, in the alternative, for a new trial.[1] The United States of America ("the government") responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

I.  **BACKGROUND**

On June 14, 2024, the grand jury in the United States District Court for the Eastern District of Louisiana returned a second superseding indictment charging Tekippe with six counts of healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 1 through 6); one count of making a false statement to federal agents in violation of 18 U.S.C. §§ 1001(a)(2) and 2 (Count 7); and one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Count 8).[3] With respect to Counts 1 through 6 (healthcare fraud), the indictment charged that between February 2017 and July 2020, Tekippe, a chiropractor, "submitted, and caused to be submitted, over $2.3 million in false and fraudulent claims to [Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ('BCBSLA')] for chiropractic services that were ineligible for reimbursement,

---

[1] R. Doc. 155.
[2] R. Doc. 157.
[3] R. Doc. 65.

not provided as represented, or simply not provided, including thousands of false and fraudulent claims for chiropractic services purportedly provided by [Tekippe] when he was incarcerated, traveling out of state, out of the country, or otherwise out of the office, and did not provide the services."[4]  The indictment alleged that, in order to carry out the scheme, Tekippe had to be enrolled as a provider with BCBSLA, and that to gain enrollment he falsely reported on his application and recertifications "that he had 'never been convicted of, or pleaded nolo contendere to … a federal or state felony or other criminal charge,' despite having pleaded guilty to a state felony charge in or around 2013."[5]  The indictment also alleged that in November 2019, Tekippe submitted an application to the Louisiana Board of Chiropractic Examiners ("LBCE") to renew his chiropractic license and "falsely answered 'no' when asked if had ever been arrested or convicted of a felony or misdemeanor since his last license renewal."[6]  As to Count 7 (false statement), the indictment charged that in July 2020, Tekippe falsely stated to government agents that "he had never written a massage therapy SOAP note for a patient, when in fact," he had.[7]  As to Count 8 (wire fraud), the indictment charged that from March 27, 2020, to July 20, 2020, Tekippe submitted false unemployment claims to the Louisiana Workforce Commission ("LWC") via interstate wire transmissions, falsely certifying that he was unemployed and earning no income when in fact he was receiving income, including payments from BCBSLA and other insurance companies for chiropractic services purportedly rendered.[8]

Prior to trial, the government filed a notice of intent to introduce evidence of four intrinsic acts or, in the alternative, extrinsic acts pursuant to Rule 404(b) of the Federal Rules of Evidence.[9]

---

[4] *Id.* at 1-7 (quotation at 3).
[5] *Id.* at 3 (brackets omitted).
[6] *Id.* at 6.
[7] *Id.* at 7-8.  The indictment explains that "'SOAP' was an acronym for subjective, objective, assessment, and plan and was a method of documenting a patient visit." *Id.* at 2.
[8] *Id.* at 8-12.
[9] R. Doc. 71.

2

Relevant here, the government described two of the four topics of intrinsic, or extrinsic, acts as follows:

> 1. Evidence of [d]efendant's 2013 felony conviction in Dallas County, Texas of possession of marijuana of greater than five pounds but less than 50 pounds, in violation of Tex[as] Health & Safety Code § 481.121, and evidence of [d]efendant's subsequent false certifications concerning the same to BCBSLA and the [LBCE].
>
> 2. Evidence of [d]efendant's eleven prior arrests from 2002 through 2019, some of which relate directly to the commission of the alleged fraudulent scheme, and evidence of [d]efendant's subsequent false certifications concerning his arrest record to the [LBCE].[10]

With respect to the first act – evidence of Tekippe's supposed 2013 felony conviction in Dallas County, Texas – the Court held that, under Texas law, there was no conviction.[11] Consequently, Tekippe did not falsely fail to report a felony "conviction" to BSBSLA or the LCBE, and the government could not use the evidence on that basis.[12] As to the second act – evidence of Tekippe's 11 prior arrests from 2002 through 2019 – the parties reached an agreement that the false statements would be admissible if the government provided to the defense, prior to trial, certified records of each arrest.[13] Thus, the Court allowed the evidence as intrinsic evidence if and when the government produced the promised records.[14]

A jury trial was held from March 24, 2025, through April 1, 2025.[15] At the beginning of the trial, the Court read an unredacted copy of the second superseding indictment to the jury.[16] In doing so, the Court read the following from the indictment, which was contained within the description of Counts 1 through 6:

> The manner and means of the scheme: The manner and means by which Tekippe sought to accomplish the objects and purpose of the scheme included,

---

[10] *Id.* at 2.
[11] R. Doc. 93 at 6-11.
[12] *Id.*
[13] *Id.* at 11.
[14] *Id.*
[15] R. Docs. 120; 121; 122; 123; 124; 125; 126.
[16] The parties agreed prior to trial that redaction was unnecessary. *See* R. Doc. 153 at 6.

among others, the following: Tekippe enrolled as a provider with Blue Cross Blue Shield. In doing so, Tekippe falsely certified to Blue Cross Blue Shield as part of his enrollment application and again falsely recertified in December 2017 and May 2020, that he had, quote, never been convicted of or pleaded nolo contendere to a federal or state felony or other criminal charge, close quote, despite having pleaded guilty to a state felony charge in or around 2013.[17]

No party objected.

After the reading of the indictment, the parties gave their opening statements. The government began its opening statement as follows:

> It's a simple case of you can't be in two places at once. While the defendant lounged on a beach in Aruba or sat incarcerated in a jail cell on the West Coast of the United States, he led insurance companies like Blue Cross Blue Shield of Louisiana to believe that he was right here in the Eastern District of Louisiana, in Metairie, Louisiana, personally performing chiropractic adjustments on his patients.[18]

The government went on to describe the case as concerning Tekippe's billing insurance companies for services he did not perform because, at the times they were rendered, "he was jet-setting on vacation destinations and, again, locked up somewhere across the country."[19] The government again mentioned Tekippe's being incarcerated later in its opening statement when it described Tekippe's calling the chiropractic office to advise his staff on running the business, including the submission of insurance claims, in his absence.[20] The government then alluded to the evidence of Tekippe's nine arrests from 2002 to 2019.[21]

During his opening statement, Tekippe's counsel addressed the mention of the supposed 2013 "conviction" in the reading of the second superseding indictment.[22] Specifically, he said:

> So, they started off misleading you right off the bat because when he did his application to Blue Cross, the application asked for, "Have you ever been

---

[17] R. Doc. 148 at 7.
[18] *Id.* at 32-33.
[19] *Id.* at 33-34.
[20] *Id.* at 40-41.
[21] *Id.* at 42.
[22] *Id.* at 50.

4

convicted?", and he answered "no." And that was absolutely correct. ... "Have you ever pled nolo contendere?" He said "no" and that was absolutely correct. "Are you under investigation?" The answer was "no." Absolutely correct.

But what they've done is taken his application and say, if you had told the truth, we wouldn't have done business with you, and you wouldn't know. He answered those questions and it was the truth. What they were concerned about was ... the chiropractic board that would say, "We're giving you your license. You didn't tell us about these arrests," but he's had his license renewed every year since then till today. He's never been without his license.

They did call him up to explain it, and when he explained it, they said, "Okay. You got your license. Go back." Of course, he should have said, "I got arrested," because it was all stuff that never went anywhere.[23]

Over the course of the trial, the government introduced into evidence more than 100 exhibits and called 13 witnesses to testify against Tekippe, including Tekippe's former employees and representatives of BCBSLA, the LCBE, the LWFC, and the FBI.[24] Tekippe, in turn, introduced just over 20 exhibits and called two witnesses in his defense, a former employee and himself.[25] Neither party mentioned the 2013 "conviction" (*i.e.,* guilty plea) during the course of the trial.[26] However, evidence was presented, and the government highlighted in its closing argument, that Tekippe was in jail in September and October of 2019 when the services that were the subject of Counts 4, 5, and 6 were purportedly performed.[27] Defense counsel mentioned the arrests during closing to say that the LCBE repeatedly renewed Tekippe's license in spite of those

---

[23] *Id.* at 50. Although defense counsel stated that "they" (presumably, the government) misled the jury, the indictment does not say that Tekippe was convicted in 2013. It says that he "pleaded guilty to a state felony charge in or around 2013." R. Doc. 65 at 3. This Court held in the Rule 404(b) ruling that, although Tekippe pleaded guilty to that charge, there was no "conviction" under Texas state law. R. Doc. 93 at 6-11. Consequently, the indictment actually mentions only a guilty plea, not a conviction.

[24] R. Docs. 121; 122; 123; 128.

[25] R. Docs. 123; 124; 125; 128.

[26] In fact, after the opening statements, the government argued to the Court, outside the presence of the jury, that the defense had opened the door to introducing evidence of that 2013 "conviction." R. Doc. 148 at 55-65. The Court reminded the parties that it had ruled that there was no 2013 conviction, and the evidence was inadmissible. *Id.* at 57, 61. The Court also stated that the ruling would remain in place as long as the parties both left things where they stood at that time. *Id.* at 64.

[27] R. Docs. 151 at 55-56, 67-68; 153 at 117, 124-25.

arrests once they learned of them.[28] After deliberating over the course of two days, the jury returned a guilty verdict on Counts 1, 2, 3, 4, 5, 6, and 8, but acquitted Tekippe on Count 7.[29]

## II. PENDING MOTION

Tekippe filed the instant motion, arguing that he should be acquitted or, alternatively, retried, because the jury verdict was based on impermissible character evidence and not facts actually admitted at trial.[30] Tekippe argues that the mention of the 2013 "conviction" in the reading of the indictment, coupled with the government's repeated references to his other arrests, tainted the trial by irreparably destroying his credibility, leaving him without a way to demonstrate that he did not have the requisite knowledge or intent to defraud.[31] In other words, says Tekippe, it made the jury more likely to believe the government's case than "Tekippe's rendition of the facts."[32] Tekippe further contends that the government's case was "weak" and improperly bolstered by the repeated references to his arrests.[33] Finally, Tekippe asserts that the government improperly stated during its closing argument that he fraudulently billed other insurance companies, which further tainted the jury's decision.[34]

In opposition, the government recounts the evidence it presented at trial against Tekippe as to Counts 1 through 6 and 8, and argues that it made a strong case, which properly led the jury to convict Tekippe on those counts.[35] The government asserts that the Court's reading of the indictment in full at the beginning of the trial did not improperly taint the jury because the Court later instructed the jury that the indictment is not evidence and a copy of the indictment was not

---

[28] R. Doc. 153 at 140.
[29] R. Docs. 125; 126; 127.
[30] R. Doc. 155-1 at 2-3.
[31] *Id.* at 4.
[32] *Id.* at 4-5.
[33] *Id.* at 5-6.
[34] *Id.* at 6-8.
[35] R. Doc. 157 at 1-7.

6

sent back to the jury during deliberations.[36] The government also urges that Tekippe's argument regarding its mention of the arrests should be "disregarded" because the Court's pretrial ruling on the Rule 404(b) motion permitted the government to discuss the arrests.[37] Further, the government contends that its alluding to Tekippe's billing other insurance companies in its closing was not improper or prejudicial because it intended to show that Tekippe controlled the billing and continued to bill insurance companies while he simultaneously collected unemployment benefits.[38] Moreover, says the government, the statement was stricken from the record and the jury was instructed that attorneys' statements are not evidence.[39]

### III. LAW & ANALYSIS

#### A. Rule 29 Standard

Rule 29 of the Federal Rules of Criminal Procedure allows a defendant to move for a judgment of acquittal within 14 days after a guilty verdict. Fed. R. Crim. P. 29(c)(1). Under Rule 29(a), a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When evaluating a defendant's Rule 29 motion, a court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see United States v. Rodriguez*, 138 F.4th 258, 265 (5th Cir. 2025), *cert. denied*, 2025 WL 1787792 (June 30, 2025). The court must decide "if the fact finder was presented with sufficient evidence to support the verdict reached." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005). Moreover, the reviewing court is "highly deferential to the jury's determination of guilt" and "may

---

[36] *Id.* at 8-11.
[37] *Id.* at 9 n.1.
[38] *Id.* at 11-13.
[39] *Id.* at 12-14.

not reweigh evidence, nor second-guess credibility choices that support the jury's verdict." *United States v. Hill,* 63 F.4th 335, 361 (5th Cir. 2023) (quotations omitted). Evidence is insufficient if the verdict "rest[s] on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011) (quotation omitted). The evidence, all reasonable inferences, and all credibility determinations must be viewed in the light most favorable to the verdict. *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008).

### B. Rule 33 Standard

Rule 33 of the Federal Rules of Criminal Procedure also permits a defendant to move for a new trial within 14 days after the verdict on grounds other than newly discovered evidence. Fed. R. Crim. P. 33(b)(2). "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is appropriate "only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (quotation omitted). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). While, in resolving Rule 33 motions, a court "must carefully weigh the evidence and may assess the credibility of the witnesses," the court "must not entirely usurp the jury's function or simply set aside a jury's verdict because it runs counter to [the] result the district court believed was more appropriate." *United States v. Tarango,* 396 F.3d 666, 672 (5th Cir. 2005) (quotation and internal citations omitted). Motions for new trial "are not favored" and should be granted only with "great caution," *O'Keefe*, 128 F.3d at 898, and "infrequently by district courts, unless warranted by exceptional circumstances." *Tarango*, 396 F.3d at 672 (quotation omitted).

**C. Analysis**

Whether analyzed under Rule 29 or 33, Tekippe's motion must be denied because he has failed to show that the jury's verdict was not supported by sufficient evidence (Rule 29) or that there was a miscarriage of justice, that the evidence preponderates heavily against the verdict, or that there was an adverse effect on his substantial rights (Rule 33). Tekippe's motion addresses three supposed errors that he says irreparably tainted the jury's perception of him: (1) the Court's reading of the unredacted second superseding indictment, including its reference to the 2013 "conviction"; (2) the government's "repeated" references to the other arrests, coupled with the mention of the 2013 "conviction"; and (3) the government's statement in its closing arguing that Tekippe improperly billed other insurance companies. None of these acts amounts to error warranting a new trial, much less a judgment of acquittal, considering the substantial evidence the government introduced to prove Tekippe's guilt as to Counts 1 through 6 and Count 8.

The government introduced over 100 exhibits, which included financial and other business records, text messages and emails, phone-call recordings, and geolocation data that, taken together, demonstrated Tekippe's improper billing practices and false submissions to the LWFC.[40] The jury heard testimony from several of Tekippe's former employees regarding the billing of BCBSLA for chiropractic services that clients did not receive, the fabrication of SOAP notes, and Tekippe's knowledge and direction of such practices.[41] The former employees' testimony was supported by that of the BCBSLA and FBI representatives explaining their investigations into Tekippe's improper billing.[42] Moreover, evidence was adduced that neither Tekippe, nor another chiropractor working under his direction, performed the services underlying the discrete acts of

---

[40] R. Doc. 128.
[41] *See generally* R. Docs. 149; 150; 151.
[42] *Id.*

improper billing alleged in Counts 1 through 6.[43]  Further, a representative of the LWFC testified (as to Count 8) that Tekippe collected unemployment benefits while simultaneously billing insurance companies for chiropractic services supposedly rendered to patients.[44]  Viewing all of this evidence in the light most favorable to the verdict, a rational juror could have found that the government established the essential elements of Counts 1 through 6 (healthcare fraud) and Count 8 (wire fraud) beyond a reasonable doubt.[45]

With this substantial evidence as a backdrop, the three assignments of error raised by Tekippe could not have tainted the jury's guilty verdict on Counts 1 through 6 and Count 8.  First, Tekippe waived his right to complain about the reading of the unredacted indictment by failing to lodge an objection prior to trial.  All counsel agreed at the pretrial conference that it was unnecessary to redact the indictment before it was read to the jury.[46]  This conference occurred well after the Court ruled that the government would not be allowed to present evidence of a 2013 deferred adjudication because it was not a "conviction" under Texas state law, thus providing Tekippe with ample opportunity to take any other precautions he deemed necessary with respect to the unredacted indictment.  But even if the mention of the 2013 "conviction " (really, guilty

---

[43] *Id.*

[44] R. Doc. 150 at 245-77.

[45] The Fifth Circuit has upheld verdicts on similar evidence presented in like cases.  *See, e.g., United States v. Mesquias*, 29 F.4th 276, 281 (5th Cir. 2022) (holding that there was sufficient evidence to support the healthcare fraud conviction of a defendant who "ran the day-to-day operations" of a medical clinic, "issue[d] directives on how to … falsify medical records, dupe auditors, and lie to patients," and "aggressively confronted employees who questioned the scheme"); *United States v. Ezukanma*, 756 F. App'x 360, 366-67 (5th Cir. 2018) (holding that a reasonable juror could find that the defendant had knowledge of the overbilling because he attended meetings where he was instructed to overbill, received notices at home, had substantial experience in the field, and admitted knowledge of the billing practices); *United States v. Barson*, 845 F.3d 159, 164 (5th Cir. 2016) (holding that the defendant had knowledge of the healthcare fraud scheme through circumstantial evidence of his signing health care forms in blank to allow billing under his Medicare identification number, and his opening a bank account in his name to receive Medicare reimbursements, together with testimony of an FBI investigator's suspicion of wrongdoing); *United States v. Willett*, 751 F.3d 335, 340 (5th Cir. 2014) (holding that the defendant's proximity to the fraudulent activities and his daily meetings to review the clinic's billing amounted to sufficient evidence for the fact-finder to infer that the defendant knew about the fraud).

[46] R. Doc. 153 at 6.

plea) should have been redacted from the indictment, notwithstanding no party's request to do so, the brief mention did not substantially prejudice Tekippe. Notably, neither the government nor the Court mentioned the 2013 guilty plea again.[47] And, with the agreement of all parties and the Court, the whole of the indictment was not given to the jury during its deliberations.[48] The Court instructed the jury at the end of the trial that the indictment was not evidence, but only an accusation, and they, as jurors, were required to follow the Court's instructions.[49] Tekippe did not object to these instructions. "[B]ecause the jury is presumed to follow its instructions, [the Court] presume[s] that the jury followed the instructions" not to consider the indictment as evidence. *United States v. Grant*, 850 F.3d 209, 216 (5th Cir. 2017) (internal citation omitted) (holding that the defendant was not prejudiced by the jury's receiving an indictment that the defendant claimed contained an error, because "the jury was warned that the indictment was 'merely an accusation, nothing more,' [and] was further instructed that it was their duty 'to follow all of the rules of law as' the district court explained them"). In sum, the brief mention of the 2013 guilty plea in the reading of the indictment does not warrant relief under Rule 29 or 33.

Second, Tekippe waived his right to assert post-trial that the government's references to the other arrests was prejudicial because, when faced with the government's Rule 404(b) motion, Tekippe agreed that the evidence of the other arrests could be admitted, once he received the certified records of each arrest.[50] Further, the case Tekippe cites in support of his argument that the jury was tainted by the repeated references to the arrests, when coupled with the mention of

---

[47] Tekippe's counsel tangentially discussed the 2013 "conviction" during his opening statement when he said that Tekippe did not lie on his BCBSLA provider application. *See* R. Doc. 148 at 50. Counsel never specified a 2013 "conviction," but rather stated that Tekippe did not have a conviction when he completed the application. Tekippe does not contend that his counsel's opening statement tainted the jury.

[48] Instead, the jurors were given only the page of the indictment that listed the six counts of healthcare fraud so as to aid in their correlating the evidence of each of the identified BCBSLA claims to the corresponding count.

[49] R. Docs. 126-2 at 1, 5; 153 at 151-77.

[50] R. Doc. 93 at 11.

11

the 2013 "conviction," *United States v. Singh*, 261 F.3d 530 (5th Cir. 2001), is distinguishable. Singh was convicted of three counts of harboring aliens for commercial gain, in violation of 8 U.S.C. § 1324, and acquitted of one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 532. He moved for a new trial based on the district court's failure to sever the unrelated firearm charge from the rest of the case because its inclusion "allowed the government to introduce inflammatory evidence against him, including a felony conviction and possession of various weapons." *Id.* The appellate court agreed with Singh and reversed his conviction and sentence. *Id.* Here, in contrast, severance is not at issue, and Tekippe's jury did not receive any evidence of the misconduct underlying his prior arrests. And, importantly, Tekippe's prior arrests were presented as evidence of his criminal intent and concealment, because Counts 4, 5, and 6 were based on the submission of bills to BCBSLA for chiropractic services that were said to be performed while Tekippe was incarcerated.

Finally, Tekippe was not substantially prejudiced by the government's passing statement in its closing argument that he "kept billing every other insurance company the exact same way" that he billed BCBSLA.[51] Because "[c]ounsel is afforded much latitude during closing argument," "the criminal defendant bears a substantial burden" when "attempting to establish that a prosecutor's improper comments" caused substantial prejudice. *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001) (citations omitted). "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id.* (quotation omitted). Courts consider the following factors in determining whether to reverse a defendant's conviction on the basis of improper prosecutorial argument: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and

---

[51] *See* R. Doc. 153 at 145.

(3) the strength of the evidence supporting the conviction." *Id.* at 290-91 (quotation omitted). The "magnitude of the prejudicial effect of the prosecutor's remarks" is considered "in the context of the trial and attempting to ascertain their intended effect." *Id.* at 291.

Here, the magnitude of any prejudicial effect was small, the Court cautioned the jury, and the government's evidence of Tekippe's guilt was strong (as previously discussed). First, the statement at issue was a lone remark made in the prosecutor's closing argument, not a repeated theme. *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006) ("The prejudicial effect [of an isolated statement in the government's closing argument] is less than it is in situations where the government repeatedly makes improper arguments."). Also, Tekippe's counsel immediately objected to the statement and the Court instructed the jury to disregard it, which minimized any potential prejudice.[52] Further, the Court instructed the jury that the evidence they were to consider in assessing Tekippe's guilt consisted of "the sworn testimony of the witnesses, the exhibits, and any stipulations entered onto the record," but that "[t]he questions, statements, objections, and arguments made by the lawyers [were] not evidence."[53] "Such instructions limit the prejudicial effect of the government's argument." *Id.* at 162 (holding that "[t]he jury instructions together with the isolated nature of the comment sufficiently cures any effect the prosecutor's isolated comment might have had"). And, again, it is presumed that a jury will follow its instructions. *See Grant*, 850 F.3d at 216. Thus, the prosecutor's comment does not warrant a new trial or judgment of acquittal under Rule 29 or 33.

---

[52] *Id.* Moreover, the government argues that it did in fact present evidence to support the statement, consisting of billings to other insurance companies in 2020 – after BCBSLA stopped paying claims – which was offered to show that Tekippe was billing for chiropractic services performed while collecting unemployment. R. Doc. 157 at 11-13. Because the government appears to be correct on this point, even the isolated statement in the government's closing argument was not improper, much less prejudicial.

[53] *Id.* at 153.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Tekippe's motion for judgment of acquittal or, in the alternative, for new trial (R. Doc. 155) is DENIED.

New Orleans, Louisiana, this 22nd day of July, 2025.

 

 

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE